De Leon v Leonardos (2025 NY Slip Op 25074)

[*1]

De Leon v Leonardos

2025 NY Slip Op 25074

Decided on March 26, 2025

Civil Court Of The City Of New York, Kings County

Sanchez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 26, 2025
Civil Court of the City of New York, Kings County

Evelyn De Leon; Von Wayne Higgins; Betty Nazaire; Aron Siddo; 
 Sophia Stephenson; Yasmine Thimothe; Albina Valenzuela, Petitioner(s)

against
Nikoloas Leonardos as 7A Administrator of the Property at 
 567 St. Johns Place Brooklyn NY 11238; Dafnona Estates LTD; Department of Housing Preservation and Development, Respondent(s)

Index No. LT-326625-24/KI

Urban Justice Center
Attorneys for Petitioners
40 Rector St. 9th Floor
New York, New York 10006 
(646) 602-5642
dterbiler@urbanjustice.org
Slochowsky & Slochowsky LLP
Attorneys for 7A Administrator
26 Court Street 
Suite 304
Brooklyn, New York 11242 
(718) 625-0987
info@ssrelaw.com
HPD — LTLD
Jennifer Lundgren, Esq.
Attorney for DHPD-Housing Litigation Division
100 Gold Street
New York, New York 10038
lundgrej@hpd.nyc.gov

Enedina Pilar Sanchez, J.

Procedural History
On July 22, 2022, the Decision/Order of Justice Cheryl J. Gonzales, under Index LT- 305745-21/KI, appointed Nikolaos Leonardis of Dafnonas Estates, Ltd, at 308 84th Street, Brooklyn, New York 11209 as the 7A Administrator of the property located at 567 St. Johns Place, Brooklyn, New York 11238. Petitioners were represented by the Legal Aid Society.
The petitioners under Index LT-305745-21/KI, were Ayanna Dore, Betty Nazaire, Sonia Shand, Sophia Stephenson, Yasmine Timothe, and Albina Valenzuela.
The petitioners in the instant matter are Evelyn De Leon, Von Wayne Higgins, Betty Nazaire, Aron Siddo, Sophia Stephenson, Yasmine Thimothe, and Albina Valenzuela. Here, Petitioners seek an Order to Correct and other relief against the 7A Administrator.
The July 22, 2022 Decision/Order directed the 7A Administrator to administer the rent monies deposited with the Administrator pursuant to the Court's direction and for all residential and non-residential rents to be deposited with the Administrator. The deposited rents shall be used to remedy conditions alleged in the petition, violations of record issued by the Department of Housing Preservation and Development (HPD), to undertake work authorized by RPAPL Section 778(1), and any other condition as required or authorized by law.
Among the responsibilities of the 7A Administrator described in the July 20, 2022, Decision/Order is the obligation to enter into a Compliance Agreement with HPD, at ¶10.c).
The Instant Petition and Respondent's Cross-Motion
Here petitioners have filed the instant Order to Show Cause by counsel, the Urban Justice Center, seeking an Order to Correct against the 7A Administrator, a finding of violations under the New York City Housing Maintenance Code (HMC) and the Building Code, the imposition of civil penalties, a finding of harassment under Section 27-2005(d) with civil penalties, an order enjoining respondent from permitting violations to exist, an order for attorneys' fees, costs and disbursements and for such other and further relief.
The 7A Administrator retained counsel and filed a Verified Answer, February 11, 2025.
On February 11, 2025, respondent HPD moved by Notice of Cross Motion for an order to dismiss the petition for failure to state a cause of action for which relief can be granted; an order finding that petitioners have prevented and frustrated the 7A Administrator and HPD from implementing any meaningful remedial action to the subject property; an order that petitioners have failed to provide access; an order for immediate access to allow the interior work to commence or allow the petitioners to enter an Order to Correct with the landlord.
During conference and argument, the Court was informed that HPD has made available an apartment for the temporary relocation of petitioners for the needed work to commence. Petitioners' counsel argued that the proposed location is not in the neighborhood, as it is 4 miles away from the subject property. Petitioner residing in Apartment 1R, who must relocate for the work to commence, was invited to appear in court and address the proposed temporary relocation. Said petitioner appeared virtually via telephone call on March 14, 2025. The conference did not resolve the impasse.
Petitioner's Order to Show Cause and HPD's notice of cross-motion were further argued and marked submitted on March 18, 2025.
[*2]Findings and Undisputed Facts
There is no dispute that the work required at the property calls for the installation of a sprinkler system. The work was planned to commence on the first floor, and this would require the tenants on the first floor to move out temporarily. When the work is completed on the first floor, then the tenants would move back into their apartments and the work would proceed to the second floor. The work would continue in the same manner for the third and fourth floors. There is an unoccupied apartment, Apartment 2F; however, petitioners take the position that this apartment is not habitable and cannot be used as an interim dwelling while respondent commences the work on the first floor.[FN1]

Respondent HPD have demonstrated that work permits were secured from the Department of Buildings (DOB). The work permits are about to expire. HPD has made a habitable apartment available for petitioners to reside in while the work is being done. Over a million dollars have been committed to this property to accommodate the request of the petitioners to retain the two-bedroom layout of the apartments. Although the two-bedroom layout is contrary to the building's certificate of occupancy, HPD made a commitment to legalize the building. The apartments had been converted from railroad-style to two-bedroom apartments.
The legalization of the apartments into two-bedroom apartments requires the installation of a sprinkler system throughout the building to comply with the Building Code and to secure the proper certificate of occupancy. The work permits were issued and the work ready to commence since August 2024. HPD states that in October 2023 there was a construction meeting with the petitioners. At the meeting, HPD informed all the tenants that once the work permits were issued the work would commence on the first floor and the tenants would need to be temporarily relocated to another 7A building.[FN2]
HPD states that the contractor will not be indefinitely available to commence the work. The work permits would have to be renewed, causing additional costs and expenses to HPD and beyond the procedures available to a 7A Administrator.
Discussion and Conclusion
Petitioners are tenants under a 7A Administrator pursuant to the petition they filed in [*3]2021 and cannot now seek an order against the 7A Administrator. The responsibilities of the 7A Administrator are governed by the July 20, 2022, Decision/Order, Article 7A, and the HPD rules and regulations. HPD is required to promulgate rules and regulations regarding the criteria for the selection of a 7A Administrator. Here the 7A Administrator is following HPD rules and regulations. HPD argues and shows that the 7A Administrator has performed the required responsibilities. Here the 7A Administrator is under court order to comply with HPD protocol.
On August 26, 2024, the New York City Department of Buildings issued a work permit for all the floors. The description of the work includes "rehabilitation and renovation throughout a 4-story with cellar building." The permit expires on April 28, 2025.
Petitioners' argument is that they have a point of contention regarding the location of the temporary relocation apartment; this argument is without merit. An Order of Correct would not resolve the impasse created by the failure to proceed with the construction plan that requires for each floor to be vacant.
Petitioners' contention regarding the location of the relocation apartment does not address or offer an access date to commence the renovations needed. The building needs work, and the only way to bring it into compliance is to begin with the installation of the sprinkler system. The location of the temporary accommodation is not unduly burdensome or unmanageable. The issue has been discussed since September 2024, when the instant petition was filed. Almost seven months have passed since, and nothing has moved forward other than the belief that another relocation apartment should be offered to the tenant in Apartment 1R.
The court agrees that an alleged failure to provide access is not a defense as a matter of law to an order to correct. Here, however, the failure to give access is based upon a contention that lacks a legal foundation. An Order to Correct would not resolve this impasse. The access issue would be the same. The 7A Administrator would not have access to other relocation apartments. The 7A Administrator must work within the confines of Article 7A and the resources available via HPD. See, Mendoza v. 74-78 Post Ave. Heights Assoc. LLC, 76 Misc 3d 963, 2022 NY Slip Op 22246, [Civ Ct, New York County 2022] (the court found that the owner is not required to pay the costs of relocating the tenant to more appropriate housing from where they had been placed by HPD.)
The appointment of a 7A Administrator was found proper. The correction of the violations and the goal to bring the building into compliance, supported by the work permits issued, is fundamentally at odds with the resistance to provide access to the first-floor units to commence the needed repairs and substantial renovations. An order to correct, would not address the implementation of the renovation/repair plan, it would merely cause more delay. Further, the 7A Administrator is placed in the untenable position of trying to correct violations for which a plan has been designed only to face the same contention that the tenant in Apartment 1R does not accept the current relocation apartment. The 7A Administrator is bound to follow the mandate of the order of appointment and to provide information to HPD.
HPD's essential involvement and oversight of buildings under the 7A program would indicate that the 7A Administrator is following protocol. The scope of work presented by HPD indicates a comprehensive plan to correct violations. The plan, however, requires the participation of the tenants to provide the needed access to commence the work. It is not clear from the statutory framework that tenants can seek an order to correct against the very 7A Administrator appointed and accountable to HPD. See, Matter of Commissioner of Dept. of Hous. Preserv. & Dev. of City of NY (Wyckoff Holdings NY LLC), 2025 NY Slip Op 25039 [App [*4]Term, 2nd Dept, 2nd, 11th, 13th Jud Dist].
The petition here fails to state a cause of action, and it must be dismissed with prejudice. Petitioners may want the situation at their home to improve, however, without complete participation with the plan outlined by the 7A Administrator and HPD the work will be delayed.
Accordingly, it is
ORDERED that petitioner's order to show cause seeking an order to correct, a finding of harassment and other relief is denied. Respondent HPD's cross-motion is granted to the extent the petition is dismissed and the request for an access order is denied.
This constitutes the Decision/Order of the Court.
This Decision/Order will be uploaded to NYSCEF.
Dated: March 26, 2025
Queens, New York
SO ORDERED,
HON. ENEDINA PILAR SANCHEZ
Judge, Housing Court

Footnotes

Footnote 1: Regarding Apartment 2R, HPD states that petitioner seek a rent waiver rent. It is not disputed that certain tenants are not paying rent to the 7A Administrator. RPAPL Section 783 provides that the defense of the warranty of habitability shall not be applicable to a 7A Administrator, unless the court were to find that the Administrator failed to perform its duties. Here, HPD supports the actions of the Administrator and shows the steps that have been taken to correct conditions in the building. The ultimate step calls for access to the first floor to commence the building wide work for which a work permit was issued by DOB in August 2024.

Footnote 2: A temporary first floor relocation apartment has been offered to the petitioner residing in Apartment 1R. The relocation apartment is located at 395 Linden Street, Brooklyn. It is being held empty, unrented to others, for the benefit of petitioner in Apartment 1R, however, since August 2024 there has been no traction on moving temporarily into this apartment for the needed work to commence at 567 St. John's Place, Brooklyn.